STATE of Iowa, Appellee,

v.

Edward R. COIL, Appellant.

No. 60339.

Supreme Court of Iowa.

March 22, 1978.

John Gerken, of Cudahy Law Firm, Jefferson, for appellant.

Richard C. Turner, Atty. Gen., Joseph Beck and Faison Sessoms, Asst. Attys. Gen., and Nicola Martino, Greene County Atty., for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

LeGRAND, Justice.

A jury found defendant guilty of assaulting a thirteen-year-old girl with intent to commit rape in violation of § 698.4, The Code, 1975. He was sentenced to serve a term of not more than ten years in the men's reformatory, a judgment from which he appeals. We affirm.

Defendant raises two issues on this appeal as follows:

1. He asserts § 698.4 is an unconstitutional invasion of privacy under the Fourteenth Amendment of the Constitution of the United States.

2. He claims he was denied effective counsel.

## I. *Right of Privacy*

The statute under which defendant was convicted makes it a crime to "assault a female with intent to commit a rape." As material to this case, rape is defined in § 698.1, The Code, as follows:

"If any person ravish and carnally know any female by force or against her will, or if any person carnally know and abuse any female child under the age of sixteen years, * * * he shall be imprisoned in the penitentiary for life, or any term of years, not less than five, and the court may pronounce sentence for a lesser period than the maximum, the provisions of the indeterminate sentence law to the contrary notwithstanding."

We have held assault with intent to commit rape includes an assault with intent to commit *statutory* rape, even though there may have been purported consent by the minor female partner. *State v. Anderson,* 222 N.W.2d 494, 495–96 (Iowa 1974).

Defendant's Constitutional challenge to the statute is on the narrow ground that it makes a consensual "assault," as well as a forcible one, a crime when a minor female is involved. More particularly, he asserts the trial court's instructions told the jury it could find defendant guilty even if the young girl consented to the assault upon her.

 The state claims this issue was not properly preserved and should not be considered. While there may be some merit to this as far as the instruction is concerned, the same matter was raised by defendant's demurrer to the information. We hold it is properly before us.

Defendant relies strongly on *Carey v. Population Services International et al.,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) and *Planned Parenthood of Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

These cases announce standards protecting the right to privacy. Generally they restrict the right of the state to unnecessarily interfere in personal decisions relating to marriage, procreation, contraception, family relationships, and child rearing and education. *See* 431 U.S. at 684, 97 S.Ct. at 2016, 52 L.Ed.2d at 684.

By a five-to-four majority, we said in *State v. Pilcher,* 242 N.W.2d 348 (Iowa 1976) the state must demonstrate an interest which is "compelling and necessary" to accomplishing a permissible state policy before it may interfere in recognized areas of fundamental rights, among which we placed sexual relations performed in private between consenting *adults* of the opposite sex. Specifically excluded from our *Pilcher* holding was the matter of "adult corruption of children." *See* 242 N.W.2d at 359.

Likewise, in *Carey* and *Planned Parenthood,* the court made it clear sexual conduct involving minors is not to be judged by the same rules as those which govern. adults.

In *Carey* the court said:

"The question of the extent of state power to regulate conduct of minors not constitutionally regulable when committed by adults is a vexing one, perhaps not susceptible to precise answer. We have been reluctant to attempt to define 'the totality of the relationship of the juvenile and the state.' * * * Certain principles, however, have been recognized. 'Minors, as well as adults, are protected by the Constitution and possess constitutional rights.' *Planned Parenthood of Central Missouri v. Danforth, supra,* 428 U.S. [52] at 74, 96 S.Ct. [2831] at 2843, 49 L.Ed.2d 788. * * * On the other hand, we have held in a variety of contexts that 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.' *Prince v. Massachusetts, supra,* 321 U.S. [158] at 170, 64 S.Ct. [438] at 444, 88 L.Ed. 645; *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195, [44 Ohio Ops.2d 339 (1968)]. *See also*

*McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971)." (431 U.S. at 692, 97 S.Ct. at 2020, 52 L.Ed.2d at 689–90.)

A concurring opinion in that same case contains this statement:

"There is also no justification for subjecting restrictions on the sexual activity of the young to heightened judicial review. Under our prior cases, the states have broad latitude to legislate with respect to adolescents. The principle is well settled that 'a State may permissibly determine that, at least in some precisely delineated areas, a child * * * is not possessed of that full capacity for individual choice' which is essential to the exercise of various constitutionally protected interests." (431 U.S. at 705, 97 S.Ct. at 2027, 52 L.Ed.2d at 697–98.)

A further significant comment is found in *Carey* in this footnote at 431 U.S. at 693, 97 S.Ct. at 2021, 52 L.Ed.2d p. 690:

"This test [requiring only that there be a significant state interest in cases involving minors] is apparently less rigorous than the 'compelling state interest' test applied to restrictions on the privacy rights of adults. * * * Such lesser scrutiny is appropriate both because of the States' greater latitude to regulate the conduct of children * * * and because the right of privacy implicated here is 'the interest in independence in making certain kinds of decisions,' * * * and the law has generally regarded minors as having a lesser capability for making important decisions."

The *Planned Parenthood* case relied on by defendant contains similar statements relating to state regulation of sexual conduct by minors. We set out several of them here:

"Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights. * * * *The court indeed, however, long has recognized that the state has somewhat broader authority to regulate the activities of children than of adults * * * *"* (428 U.S. at 74, 96 S.Ct. at 2843, 49 L.Ed.2d at 808). (Emphasis added.)

A concurring opinion in *Planned Parenthood* includes this:

"Because he may not foresee the consequences of his decision, a minor may not make an enforceable bargain. He may not lawfully work or travel where he pleases, or even attend exhibitions of constitutionally protected adult motion pictures. Persons below a certain age may not marry without parental consent. Indeed, such consent is essential even when the young woman, is already pregnant." (428 U.S. at 102, 96 S.Ct. at 2856, 49 L.Ed.2d at 823–24)

In *State v. Drake,* 219 N.W.2d 492, 495 (Iowa 1974) we held age is a proper factor to be considered in examining statutes relating to sexual behavior. There we cited with approval the following from *In re Interest of J. D. G.,* a child under 17 years of age, 498 S.W.2d 786, 792 (Mo.1973):

"Age is a legitimate legislative consideration when the evil sought to be prevented is directly related to knowledge of the consequences of the prohibited act by the party who will be seriously damaged by the act and where, in the very nature of things, one of the participants cannot suffer as serious and substantial adverse consequences as the other.

"The example that obviously comes to mind is that the female can become pregnant but the male cannot. Along with pregnancy comes all of the attendant psychological, medical, sociological, and moral problems, including questions of whether to have an abortion or to bear the child. While other adverse effects on the female could be set forth as well as the problems of the bastard child, it is obvious to all that there are virtually no adverse consequences to the male but the effect upon the female can be disastrous.

"The selection of the female age factor in a statutory rape statute is basically a legislative function. The court holds that the female age factor contained in [the

statute] is directly and reasonably related to the evil sought to be prevented and does not violate the Equal Protection Clause of the Missouri or United States Constitutions."

While the objection urged in the above case went to the equal protection clause, the quoted passage is applicable as well under present circumstances.

■ We hold the state has a significant interest in regulating sexual activity on the part of its young people. As the compelling interest test we have adopted for adult sexual behavior is not applicable to minors, this significant interest permits the state to fix the age at which minor females may consent to sexual intercourse and the age, therefore, at which they may consent to an assault which has that as its goal.

■ Defendant's right to privacy as an adult cannot be enlarged to include sexual conduct with a minor female in violation of statutes fixing the age at which she may consent thereto. The trial court was right in rejecting this constitutional argument.

■ II. We turn now to the remaining issue charging defendant had ineffective trial counsel. Needless to say, present counsel entered the fray after trial and now asserts defendant did not have a fair trial because of the incompetence of the lawyer who represented him then.

Defendant lists four areas of complaint, which, he says, demonstrate counsel was so ineffective as to deny him a fair trial. They are:

1. The court's refusal to allow defendant to employ an investigator at public expense.

2. The court's refusal to grant a continuance.

3. Failure of counsel to preserve certain issues for appeal.

4. An overall allegation that the defendant was denied a fair trial by counsel's ineffectiveness "under all the circumstances."

It should be noted that the first two of these concern decisions by the court and would not ordinarily be attributable to counsel's inefficiency. However, defendant's argument asserts such relief could have been obtained if counsel had been diligent in pursuing the available remedy. We consider the matter in that context.

The complaints against trial counsel deal largely with matters of professional judgment and trial strategy, which are always subject to reappraisal after a case is lost. They involve whether further investigation should have been made and whether additional witnesses should have been called. Other criticism suggests counsel was unfamiliar with criminal procedure and didn't know how to get things done.

We have defined effective counsel as one whose performance in all the circumstances is within the range of normal competency. *State v. Dee,* 218 N.W.2d 561, 563 (Iowa 1974). We have said we should not decide a claim such as is made here without an adequate factual basis to support it. *State v. McCray,* 231 N.W.2d 579, 581 (Iowa 1975).

There are cases when incompetency is so glaring that we are justified in saying so upon an examination of the record. Ordinarily, however, we should be slow to do so on what amounts to an ex parte hearing. Counsel may, indeed, have had good reason for each step he took or failed to take. There is nothing in counsel's conduct so obviously wrong that it defies explanation or excuse.

We find no basis on which to hold defendant had ineffective counsel. This holding is without prejudice to his right to raise this issue by application for postconviction relief, where a full evidentiary hearing may be had and where counsel will have an opportunity to respond to defendant's charges. *See Wycoff v. State,* 226 N.W.2d 29, 32 (Iowa 1975); *Ogden v. State,* 215 N.W.2d 335, 338 (Iowa 1974); *Kime v. Brewer,* 182 N.W.2d 154, 155 (Iowa 1970). Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned.

AFFIRMED.